**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                           :
                                                       :
               Plaintiff,                              :    CIV. NO. _____
                                                       :
v.                                                     :
                                                       :    **COMPLAINT FOR VIOLATIONS OF**
                                                       :    **SECTIONS 14(a) AND 20(a) OF THE**
MEDIDATA SOLUTIONS, INC., TAREK                        :    **SECURITIES EXCHANGE ACT OF**
SHERIF, GLEN DE VRIES, CARLOS                          :    **1934**
DOMINGUEZ,  NEIL M. KURTZ, M.D.,                       :
GEORGE W. MCCULLOCH, DR. MARIA                         :    **JURY TRIAL DEMANDED**
RIVAS, LEE A. SHAPIRO, and ROBERT B.                   :
TAYLOR,                                                :
,                                                      :
                                                       :
               Defendants.                             :
---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon
information and belief, including investigation of counsel and review of publicly-available
information, except as to those allegations pertaining to Plaintiff, which are alleged upon
personal knowledge:

1.      This is an action brought by Plaintiff against Medidata Solutions, Inc.
("Medidata" or the "Company"), and the Medidata board of directors (the "Board" or the
"Individual Defendants" and collectively with the Company, the "Defendants") for their
violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange
Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §
244.100, in connection with the proposed acquisition of Medidata by Dassault Systèmes SE and
its affiliates ("Dassault Systèmes").

2.    Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 19, 2019 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby 3DS Acquisition 6 Corp., ("Merger Sub"), a Delaware corporation and wholly owned subsidiary of Dassault Systèmes Americas Corp., a Delaware corporation and a wholly-owned subsidiary of Dassault Systèmes, will merge with and into Medidata with Medidata surviving the merger as a wholly-owned subsidiary of Dassault Systèmes (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Medidata common share issued and outstanding will be converted into the right to receive $92.25 in cash (the "Merger Consideration").

3.    Defendants have now asked Medidata stockholders to vote for the Proposed Transaction at the upcoming Special Meeting of the Stockholders, currently scheduled to be held on August 16, 2019, based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning, among other things, (i) Medidata's financial projections, relied upon by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) the sales process. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and

20(a) of the Exchange Act as Medidata stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Medidata stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant is headquartered in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Medidata is headquartered in this District.

### PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Medidata common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Tarek Sherif, a co-founder of the Company and has served as a member of the Board since 2000, Chairman of the Board since 2009, and Chief Executive Officer since 2001.

11.     Individual Defendant Glen de Vries is a co-founder of the Company and has served as a member of the Board since 1999, the Company's President since February 2008, and from 2000 to 2008, the Chief Technology Officer.

12.     Individual Defendant Carlos Dominguez has served as a member of the Board since 2008.

13.     Individual Defendant Neil M. Kurtz, M.D. has served as a member of the Board since 2002.

14.     Individual Defendant George W. McCulloch has served as a member of the Board since 2004.

15.     Individual Defendant Dr. Maria Rivas has served as a member of the Board since 2018.

16.     Individual Defendant Lee A. Shapiro has served as a member of the Board since 2011.

17.     Individual Defendant Robert B. Taylor has been a member of the Board since 2008.

18.     Defendant Medidata is incorporated in Delaware and maintains its principal offices at 350 Hudson Street, 9th Floor, New York, New York 10014.  The Company's common stock trades on the New York Stock Exchange under the symbol "MDSO."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

21.     Medidata, incorporated on April 12, 2000, is a provider of cloud-based solutions for life sciences. The Company provides cloud-based solutions for clinical research in life sciences, offering platform technology that focuses on the clinical development. The Medidata Clinical Cloud provides a platform of technology and data analytics solutions designed to optimize activities across clinical development. The Company's plan study addresses three areas to ensure optimal study design, grant development and negotiation, and investigator payments. Study Design Optimization enables customers to gain visibility into the impact of protocol elements on resource and trial endpoints. Grants Manager compares specific industry benchmarks and analytics, using industry's database of negotiated procedure costs, to support appropriate grants to investigator sites and automated negotiations with multiple investigator sites. Payments enables customers to establish a global investigator payment strategy and process to automate payment calculation, distribution and reporting, including tax and currency exchange calculations. These solutions help customers use resources through planning at the start of trial design and protocol development.

22.     On June 12, 2019, the Company announced the Proposed Transaction:

Vélizy-Villacoublay, France and New York — June 12, 2019 — Dassault Systèmes (Euronext Paris: #13065, DSY.PA) and Medidata Solutions, Inc. (NASDAQ: MDSO), leader of the digital transformation of the Life Sciences industry for clinical development, commercial, and real-world data intelligence, today announced the signing of a definitive agreement for Dassault Systèmes to acquire Medidata in an all-cash transaction at a price of $ 92.25 per share of Medidata, representing an enterprise value of $5.8 billion. The transaction was unanimously approved by the

Boards of Directors of both companies. Medidata's fiscal year ended December 31, 2018, and its revenue was $636 million.

With the acquisition of U.S.-based Medidata and its clinical and commercial solutions, Dassault Systèmes will reinforce its position as a science-based company by providing the Life Sciences industry with an integrated business experience platform for an end-to-end approach to research and discovery, development, clinical testing, manufacturing and commercialization of new therapies and health technologies.

\* \* \*

Medidata's clinical expertise and cloud-based solutions power the development and commercialization of smarter therapies for 1,300 customers worldwide, including pharmaceutical companies and biotechs, contract research organizations (CROs), and medical centers and sites. Its solutions enable efficiency and improve quality throughout clinical development programs by enhancing decision-making, accelerating processes execution and oversight, minimizing operational risk, reducing costs and adapting trial strategies. Thirteen of the top 15 drugs sold in 2018 were powered by Medidata's technology. Eighteen of the top 25 pharmaceutical companies and nine of the top 10 CROs are all Medidata customers. Founded in 1999, Medidata is headquartered in New York City, with 16 offices across seven countries, notably in the U.S., Japan, Korea, and the U.K., and counts 2,800 employees and contractors.

\* \* \*

Completion of the acquisition is expected during the last quarter of 2019 and is subject to certain regulatory approvals, approval by the majority of Medidata's shareholders and other customary closing conditions.

23.     The Board has agreed to the take-private Proposed Transaction which will deprive the Company's shareholders from enjoying any future growth of the Company. It is therefore imperative that Medidata stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

24.    On July 19, 2019, Medidata filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Medidata Financial Projections*

25.    The Proxy Statement fails to provide material information concerning financial projections by Medidata management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Proxy at 50. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Medidata management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the projections for Medidata, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric Unlevered Free Cash Flow from 2019 through 2023, but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement 52.

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure. At the very least, the Company must disclose the line item forecasts for the financial metric that were used to calculate the aforementioned non-GAAP measure. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analyses*

30.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* ("DCF"), the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the individual inputs and assumptions underlying the discount rates ranging from 8.9% to 9.9% and the range of perpetual growth rate from 2.0% to 4.0%; and (iii) all line items used to calculate Unlevered Free Cash Flow.

31.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the application of the revenue multiple range of 5.0x to 7.0x; and (ii) the basis for applying the discount rate of 9.5%.

*Omissions and/or Material Misrepresentations Concerning The Sales Process*

32.     With respect to the *Background of the Merger*, the Proxy Statement fails to disclose whether the confidentiality agreements executed with each potential acquirer Group contained "don't-ask-don't-waive" provisions.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Medidata within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Medidata, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Medidata, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Medidata, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  July 24, 2019                        Respectfully submitted,

                                             **WOLF HALDENSTEIN ADLER**
                                             **FREEMAN & HERZ LLP**

                                             By: */s/ Benjamin Y. Kaufman*
                                                   Benjamin Y. Kaufman
                                                   Gloria Kui Melwani
                                                   270 Madison Avenue
                                                   New York, New York 10016
                                                   Telephone: 212-545-4600
                                                   Facsimile: 212-686-0114
                                                   Email: kaufman@whafh.com
                                                   Email: melwani@whafh.com

                                                   *Attorneys for Plaintiff*